IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARIA CRISTINA COLIN GOMEZ, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 2:17-cv-01475-TMP |
| JOSE J. LOPEZ, *et al.*, | ) ) ) |
| Defendants. | ) |

# **MEMORANDUM OPINION and ORDER**

This matter is before the court on Plaintiff's Motion to Vacate Order and Reinstate Case, filed on September 12, 2018 (doc. 18), and the Motion to Reinstate, Motion to Intervene, and Motion to Enforce Attorney's Lien (doc. 20), filed on October 3, 2018 by Steven Mezrano and the Mezrano Law Firm P.C. A hearing was held via telephone on October 3, 2018, and the parties were instructed to brief the issue of the court's continuing jurisdiction to resolve the attorney's lien dispute. The matter has been fully briefed. The original parties have consented to the dispositive jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (doc. 9), but the putative intervenors have not.

## I. Background

This lawsuit was removed to this court on August 30, 2017, from the Circuit Court of Jefferson County, Alabama, on the basis of diversity of citizen jurisdiction. (Doc. 1). The action was originally filed in the state court in a complaint signed by both the plaintiff's current attorney, Mary Amari Bruce, and putative intervenor, Steven Mezrano. It alleged a claim arising out of a vehicle collision on August 17, 2015. (Doc. 1-2, p. 6). At the time, both lawyers were associated with the Mezrano Law Firm, P.C., the other putative intervenor. The plaintiff signed an undated "Power of Attorney and Contingent Fee Agreement" with the Mezrano Law Firm, P.C. (doc. 20-1), agreeing to pay the firm a fifty percent (50%) contingency fee if suit were filed with respect to the vehicle accident.

Following the removal to this court, the parties reached a settlement of the case on July 9, 2018, filing a Notice of Settlement with the court on July 11, 2018. Based on the Notice, the court dismissed the instant case *without* prejudice on July 31, 2018, reserving to the parties the right to seek reinstatement of the case to the active docket within forty-five (45) days in the event a problem developed in completing the settlement. The plaintiff filed her timely motion to vacate the dismissal and reinstate the case to the active docket on September 12, 2018. (Doc. 18). The defendants did not oppose the motion, and on October 3, Steven

Mezrano and the Mezrano Law Firm, P.C., filed their motion to intervene and enforce an attorney's lien against the proceeds of the settlement. (Doc. 20). That motion alleged that, just prior to the settlement of the case, on June 22, 2018, attorney Bruce left her employment with the Mezrano Law Firm, P.C. On June 29, she presented a letter to the plaintiff, notifying her of Ms. Bruce's separation from the law firm and advising the plaintiff that it was her choice whether to continue to be represented by Ms. Bruce, or by the Mezrano Law Firm, P.C., or by an entirely different attorney. The plaintiff signed the letter on June 29 to indicate her choice to continue to be represented by Ms. Bruce. In response, Mezrano and the Mezrano Law Firm, P.C. filed a statement of an attorney's lien in the Office of the Probate Judge of Jefferson County, Alabama, on August 14, claiming a lien for expenses and a *quantum meruit* portion of the fee earned in the settlement of the plaintiff's case. The statement of lien asserts the Ms. Bruce was an employee of the Mezrano Law Firm, P.C., until she left on June 22, 2018. In a telephone hearing on October 3, 2018, counsel for the original defendants confirmed that he is still in possession of the proposed settlement proceeds, but has not delivered them to Ms. Bruce because of the outstanding attorney's lien.

## II. <u>Jurisdiction</u>

The immediate question posed by the pending motions is whether the court has subject-matter jurisdiction to resolve the attorney's lien controversy. No

purpose would be served reopening the case if the court lacks jurisdiction to resolve the dispute prompting its reopening. Likewise, the court need not grant the motion to intervene if there is no jurisdiction to resolve the question presented by it.

The original lawsuit was removed to this court on the basis of diversity jurisdiction, alleging that the plaintiff and the two named defendants were citizens of different states and the amount in controversy was sufficient to meet the jurisdictional minimum of $75,000.00.[1] See 28 U.S.C. § 1332. That controversy, however, now has been settled, as everyone agrees. The issue is whether the dispute over the distribution of the plaintiff's attorney's fees is within the court's jurisdiction. The court must determine whether this dispute is part of the original "case or controversy" that was removed to the court on diversity grounds. In Kokkonen v. Guardian Life Ins. Of Am., 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d (1994), the Supreme Court reiterated that federal courts are courts of limited jurisdiction. In that case, where a party sought enforcement a settlement agreement on which the original lawsuit was dismissed by a Rule 41(a)(1)(ii)

---

[1] The motions before the court reveal that the vehicle-accident case has been settled on an agreement by the defendants to pay the plaintiff a total of $45,000.00, which clearly is less than the jurisdictional amount of $75,000.00. This does not undermine the court's diversity jurisdiction, however, which attached at the time of removal. Post-removal events ordinarily do not deprive a court of jurisdiction after it attaches. Poore v. Am.-Amicable Life Ins. Co., 218 F.3d 1287, 1291 (11th Cir. 2000), overruled in part on other grounds by Alvarez v. Uniroyal Tire Co., 508 F.3d 639, 641 (11th Cir. 2007); Ray v. GPR Hosp. LLC, No. 1:14-CV-1309-CC, 2015 WL 4717400, at *3 (N.D. Ga. Aug. 7, 2015).

stipulation, the Court noted, "Enforcement of the settlement agreement, however, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." Id. at 378, 114 S. Ct. at 1675-76.

Plaintiff's current lawyer, Ms. Bruce, alleges that this court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). She cites two cases for authority in the Eleventh Circuit, Broughten v. Voss, 634 F.2d 880 (5th Cir. 1981),[2] and Moreno Farms, Inc. v. Tomato Thyme Corp., 490 F. App'x 187 (11th Cir. 2012) (citing Broughten), for the proposition that the district court has the discretion to exercise "ancillary jurisdiction"[3] to resolve fee disputes between

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted all of the decisions of the former Fifth Circuit issued prior to October 1, 1981, as binding precedent.

[3] The plaintiff's brief actually refers to supplemental jurisdiction under 28 U.S.C. § 1367. The precise contours of the relationship between ancillary jurisdiction and supplemental jurisdiction are somewhat murky. Some courts have stated that ancillary jurisdiction as it existed before the enactment of § 1367 in 1990 still exists within the concept of supplemental jurisdiction. See Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 559, 125 S. Ct. 2611, 2621, 162 L. Ed. 2d 502 (2005) ("Nothing in § 1367 indicates a congressional intent to recognize, preserve, or create some meaningful, substantive distinction between the jurisdictional categories we have historically labeled pendent and ancillary"); Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1563 n. 3 (11th Cir.1994) ("Formerly known as pendent and ancillary jurisdiction, such grounds for the exercise of federal subject matter jurisdiction have now been codified in 28 U.S.C. § 1367."); Womack v. Dolgencorp., Inc., 957 F. Supp. 2d 1350, 1352 (N.D. Ala. 2013); Hogben v. Wyndham Int'l, Inc., No. 05-20944-CIV-TORRES, 2007 WL 2225970, at *5 (S.D. Fla. Aug. 1, 2007). While supplemental jurisdiction includes some concepts of ancillary jurisdiction, ancillary jurisdiction also seems to exist beyond the strict limits of § 1367. As noted in 13 Wright, Miller, Cooper & Freer, FEDERAL PRACTICE AND PROCEDURE, § 1323.2, "It seems clear that § 1367 does not apply to this form of [ancillary] jurisdiction," and is governed by case law rather than the supplemental jurisdiction statute. For this reason, § 1367(b) does not prohibit the exercise of ancillary jurisdiction, even when non-diverse parties are implicated in the

parties and lawyers in the case. But these cases must be understood in the light cast by the Supreme Court's discussion of ancillary jurisdiction in Kokkonen.

In Kokkonen, the Supreme Court defined two circumstances under which a court may exercise ancillary jurisdiction:

> Generally speaking, we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, see, e.g., Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 469, n. 1, 94 S. Ct. 2504, 2506, n. 1, 41 L. Ed. 2d 243 (1974); Moore v. New York Cotton Exchange, 270 U.S. 593, 610, 46 S. Ct. 367, 371, 70 L. Ed. 750 (1926); and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees, see, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) (power to compel payment of opposing party's attorney's fees as sanction for misconduct); United States v. Hudson, 11 U.S. (7 Cranch) 32, 34, 3 L. Ed. 259 (1812) (contempt power to maintain order during proceedings). See generally 13 C. Wright, A. Miller, & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3523 (1984); cf. 28 U.S.C. § 1367 (1988 ed., Supp. IV).

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379–80, 114 S. Ct. 1673, 1676, 128 L. Ed. 2d 391 (1994). The Court went on to reject the notion that enforcement of a settlement agreement is a claim that is interdependent with the merits of the underlying lawsuit. Id. at 380 ("[T]he facts underlying respondent's

---

ancillary dispute. See National City Mortgage Co. v.Stephens, 647 F.2d 78 (3rd Cir. 2010) (holding the common doctrine of ancillary jurisdiction survived codification of 28 U.S.C. § 1367); Reyes-Fuentes v. Shannon Produce Farm, Inc., 2012 WL 1557368 (S.D.Ga. 2012).

dismissed claim for breach of agency agreement and those underlying its claim for breach of settlement agreement have nothing to do with each other"). The Court also rejected the argument that enforcement of a settlement agreement (where the court has not expressly reserved jurisdiction to do so) is necessary for a court to protect its proceedings and vindicate its authority. The dismissal of the original lawsuit was "in no way flouted or imperiled by the alleged breach of the settlement agreement." Id. at 380-381. Although dismissal of the underlying lawsuit was part of the contractual consideration for the settlement agreement, the breach did nothing more than create a new controversy for breach of contract that had to be resolved in another action.

Notwithstanding the limitations in Kokkonen or the putative intervenors' argument that the cases cited by the plaintiff are factually and legally distinguishable, the court finds that it possesses supplemental jurisdiction to address the merits of the fee dispute. First, Kokkonen recognizes a proper use of ancillary jurisdiction is to resolve interrelated disputes in a way that allows the court to successfully manage its docket.[4] That is the case here. Despite the

---

4   The court notes also that the instant case is distinguishable from Kokkonen in another way. In Kokkonen the parties had filed a Rule 41 stipulation of dismissal, causing the court to dismiss the case without reserving any jurisdiction to resolve later-developing controversies. In the instant case, the parties have not file a stipulation of dismissal, and the court's preliminary dismissal was *without prejudice* to either party seeking reinstatement of the case within forty-five days. Effectively, the court retained jurisdiction for a period of forty-five days precisely to give the parties that time to bring back to the court any controversies that may develop. Thus,

7

putative intervenors' contention that this is not a dispute that affects the client, but is only a dispute between lawyers, the basis of the attorney's lien filed by Mezrano and the Mezrano Law Firm P.C. is the contingent fee contract signed by the client. The lien is enforceable against the settlement proceeds as an undivided corpus, as proceeds have not been distributed and are still in the possession of defense counsel. There has been no division of the funds into separate parts, differentiating between those held by the client apart from those paid to a lawyer. Thus, the lien attaches to the entire *res* of the settlement proceeds, directly implicating the interests of the original plaintiff and the original defendant, and thus potentially impacting the court's ability to manage the controversy before it.

For purposes of analysis, this case is properly viewed as one in which the client has terminated the representation of Mezrano and the Mezrano Law Firm as her counsel. There is no dispute that, until shortly before the settlement of the case, the plaintiff was represented by Ms. Bruce *and* the putative intervenors, Mezrano and Mezrano Law Firm P.C. On June 29, 2018, the plaintiff essentially exercised her option to terminate representation of her by Mezrano and the Mezrano Law Firm when she affirmatively elected to continue to be represented by Ms. Bruce alone. In such instances, the courts have exercised ancillary jurisdiction to "protect its officers" from being deprived of an earned fee. Broughten v. Voss,

---

unlike Kokkonen, this court reserved its jurisdiction and did not relinquish it prior to the filing of the motion to reinstate. The court still exercises its diversity of citizenship jurisdiction.

634 F.2d 880, 882 (5th Cir. 1981), citing National Equipment Rental, Ltd. v. Mercury Typesetting Co., 323 F.2d 784, 786 n.1 (2d Cir. 1963). In *dicta*, the court of appeals observed in Broughten, the following:

> It is true that there is a long tradition of sustaining jurisdiction to determine fees due an attorney dismissed by a client in a pending action. "When its intervention is asked for the substitution of an attorney, the court will hold the client to fair dealing, and will refuse its assistance to any attempt to take an unfair advantage of one of its officers. In this behalf courts have frequently and usually required the client to discharge the attorney's claim for services in the suit as a condition of substitution." Wilkinson v. Tilden, 14 F. 778, 780 (2d Cir. 1883).
>
>> Admittedly, where an attorney is employed ... and the clients desire to terminate the relations, the proper practice is to set a motion for substitution of counsel down for a hearing, notify the attorney of record of the motion, ascertain all that is due and owing him by reason of his services and expenses, and provide for the payment of his compensation, as a condition precedent to the allowance of the order of substitution.
>
> John Griffiths & Sons Co. v. United States, 72 F.2d 466, 468 (7th Cir. 1934). See also Woodbury v. Andrew Jergens Co., 69 F.2d 49, 50 (2d Cir. 1934).
>
>> The law seems well settled that a federal district court may condition the substitution of attorneys in litigation pending before it upon the client's either paying the attorney or posting security for the attorney's reasonable fees and disbursements, as these may be determined. This power resides in the federal court as ancillary to its conduct of the litigation.
>
> National Equipment Rental, Ltd. v. Mercury Typesetting Co., 323 F.2d 784, 786 (2d Cir. 1963) (citations omitted). See also State of

> Iowa v. Union Asphalt & Roadoils, Inc., 409 F.2d 1239, 1242-1244 (8th Cir. 1969); Doggett v. Deauville Corp., 148 F.2d 881, 883 (5th Cir. 1945).
>
> The basis for exercise of this ancillary jurisdiction is the responsibility of the court to protect its officers, see National Equipment Rental *supra* at 786 n.1, and the power of the court "to do full and complete justice." Union Asphalt *supra* at 1244.

Broughten v. Voss, 634 F.2d 880, 882 (5th Cir. 1981). Because Ms. Bruce also represented the plaintiff, the plaintiff's termination of representation by Mezrano and the Mezrano Law Firm P.C. did not require a substitution of counsel, upon which the court could condition resolving the fee dispute with the putative intervenors. Rather, in this circumstance, the court may condition the payment of the settlement proceeds and the dismissal of the case upon that resolution.

Another case that is arguably more factually analogous is Sweeney v. Athens Reg'l Medical Center, 917 F.2d 1560 (11th Cir. 1990). In that case, a fee dispute arose when an attorney representing a plaintiff left his firm, taking the plaintiff's case with him with the permission of the client. When the case settled, the settlement proceeds were deposited into an escrow account and the plaintiff filed a motion asking the court to resolve the fee dispute between her and counsel's former firm, and to allocate the settlement proceeds among the plaintiff and the various lawyers claiming a fee them. Likewise, the former firm filed a motion in the district court asking for a portion of the proceeds as its fee for representing the

plaintiff prior to the stage at which one of its lawyers withdrew from the firm and continued representing the plaintiff. While arguing that the court had ancillary jurisdiction to resolve her motion, the plaintiff contended that the former firm's motion was nothing more than a mere "permissive intervention," which cannot be supported by ancillary jurisdiction.

The court of appeals disagreed, holding that ancillary jurisdiction supported the former firm's intervention as it was an intervention as of right under Fed. R. Civ. P. 24(a), based on the prior fee agreement with the plaintiff. The court explained:

> Ancillary jurisdiction allows the court to hear claims that bear a "'logical relationship to the aggregate core of operative facts which constitutes the main claim over which the court has an independent basis of federal jurisdiction.'" Id. (quoting Revere Copper & Brass, Inc. v. Aetna Casualty & Sur. Co., 426 F.2d 709, 714 (5th Cir. 1970)). Such a nexus would allow claims of intervenors of right, but not those of permissive intervenors to be heard by the court. Id. Under Fed. R. Civ. P. 24(a) an intervenor of right is one who claims an interest in the disputed property or transaction when the dispute puts at risk the intervenor's ability to protect that interest.
>
> In the instant case, [plaintiff's] motion to allocate the settlement funds and to order partial forfeiture of the attorneys' fees required the court to construe the April 22, 1988 fee agreement to which [the former firm] was a party. No other party in the dispute had cause to represent and protect [the former firm's] interest in that agreement. See Fed. R. Civ. P. 24(a)(2). Consequently, [the former firm] is an intervenor of right whose presence ancillary jurisdiction can support.

Sweeney v. Athens Reg'l Medical Center, 917 F.2d 1560, 1565–66 (11th Cir. 1990).

The similarity of the instant case is apparent. The plaintiff executed a contingent fee agreement with the putative intervenors. When Ms. Bruce separated from the Mezrano Law Firm, the plaintiff chose to continue to be represented by her. The attorney's lien filed by the putative intervenors is based on their rights in the contingent fee contract, and there is no one present in the case who can adequately represent the interests of Mezrano and the Mezrano Law Firm. Accordingly, it appears that they are intervenors of right "whose presence ancillary jurisdiction can support." Id. at 1566.

Admittedly, Broughten and Sweeney predate the Supreme Court's decision in Kokkonen. Even so, it has been cited by the Eleventh Circuit in at least one unpublished opinion decided after Kokkonen, in which that panel never suggested that it had been abrogated or limited by Kokkonen. In Moreno Farms, Inc. v. Tomato Thyme Corp., 490 F. App'x 187 (11th Cir. 2012), citing Broughten, the court noted simply, "The existence of an attorney's lien against a party's recovery in a lawsuit is part of the same case or controversy as the underlying lawsuit." Id. at 188. Likewise, in Lewis v. Haskell Slaughter Young & Rediker, LLC, 582 F. App'x 810 (11th Cir. 2014), the court affirmed the district court's award of an attorney's fee to an attorney who withdrew for good cause from the representation

12

of the plaintiff, even after the acceptance of an offer of judgment. Despite a vigorous dissent contending that the district court did not have ancillary jurisdiction, id. at 814-15, the majority seems to have assumed without discussion that ancillary jurisdiction existed to resolve the attorney's lien against the plaintiff's consent judgment, consistent with the rationales in Broughten and Sweeney, even though neither case was cited by the majority.

Finally the court observes that several district courts in the Eleventh Circuit have applied the *dicta* in Broughten to resolve fee disputes between plaintiffs and attorneys. As one district court has said:

> One well recognized application of this narrow doctrine [of ancillary jurisdiction] is the resolution of disputes between a party to a federal lawsuit and that party's attorneys over the proper amount of fees due the attorneys for work performed in the lawsuit. See, e.g., Gottlieb v. GC Financial Corp., 97 F.Supp. 2d 1310 (S.D.Fla. 1999) and Zaklama v. Mount Sinai Medical Center, 906 F.2d 650 (11th Cir. 1990) (both adjudicating post-judgment attorneys' fees disputes under Florida law charging liens); see also Rivera-Domenech v. Calvesbert Law Offices PSC, 402 F.3d 246, 250 (1st Cir. 2005) ("Courts have rested the exercise of jurisdiction over [attorney-client] fee disputes related to proceedings before them on the doctrine of ancillary jurisdiction."); Garcia v. Teitler, 443 F.3d 202, 207-09 (2nd Cir. 2006) (federal courts have ancillary jurisdiction to address attorney fee disputes in ongoing criminal cases); Garrick v. Weaver, 888 F.2d 687, 690 (10th Cir. 1989) (quoting Jenkins, 670 F.2d at 918: "It is well established that '[d]etermining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction.'"); Foster, 771 F.Supp. at 1120 ("Courts have exercised ancillary jurisdiction over disputes between attorneys and clients over the proper amount of

> attorneys' fees due to the attorneys for work performed in the underlying litigation.").
>
> In the context of attorney fee disputes, the exercise of ancillary jurisdiction is particularly appropriate because courts have inherent jurisdiction to supervise the bar and to insure compliance with the reasonableness standard set forth in the attorneys' rules of ethics and professional responsibility. E.g., Garcia, 443 F.3d at 207; Rosquist v. Soo Line R.R., 692 F.2d 1107, 1111 (7th Cir. 1982); In re Michaelson, 511 F.2d 882, 888 (9th Cir. 1975); Broughton v. Voss, 634 F.2d 880 (5th Cir. 1981) ("The basis for exercise of this ancillary jurisdiction is the responsibility of the court to protect its officers ... and the power of the court 'to do full and complete justice.'") (internal citations omitted).

Hogben v. Wyndham Int'l, Inc., No. 05-20944-CIV-TORRES, 2007 WL 2225970, at *4–5 (S.D. Fla. Aug. 1, 2007); see also American Fed'n of State, Cty., & Mun. Employees (AFSCME) Council 79 v. Scott, 949 F. Supp. 2d 1239, 1243 (S.D. Fla. 2013) ("[A]ncillary jurisdiction doctrine is often utilized to adjudicate the resolution of disputes between a party to a federal lawsuit and that party's attorneys over the proper amount of fees due to the attorneys for work performed in the lawsuit"); Montpellier Farm, Ltd v. Crane Environmental, Inc., No. 07-22815-CIV, 2009 WL 722238, at *3 (S.D. Fla. Mar. 18, 2009); Womack v. Dolgencorp., Inc., 957 F. Supp. 2d 1350, 1353 (N.D. Ala. 2013) ("The Eleventh Circuit recognizes supplemental jurisdiction over fee disputes between *attorneys* and *clients*." (italics in original)).

It is clear, therefore, that notwithstanding the Supreme Court's discussion in Kokkonen, both the Eleventh Circuit and district courts within the circuit continue to use ancillary jurisdiction to resolve fee disputes between attorney's and clients in ongoing litigation in which the court has an independent jurisdictional ground. Although the putative intervenors attempt to frame the instant dispute as being between lawyers, it fairly must be understood as a fee dispute between the plaintiff and the intervenors, arising from her dismissal of them as her lawyers in favor of Ms. Bruce. Their claim to a fee rests on the contingent fee contract between them and the plaintiff. Thus, the instant fee dispute comes within the court's ancillary jurisdiction, given the court's original diversity jurisdiction over the underlying tort action.

## III. Conclusion

Accordingly, the plaintiff's motion to vacate the prior dismissal without prejudice of this case and to reinstate it to the court's active docket (doc. 18) is GRANTED. Further, because Mezrano and the Mezrano Law Firm, P.C., have a contingent fee contract with the plaintiff, giving them a colorable claim to a fee from the settlement proceeds, they are intervenors of right. Accordingly, their motion to intervene in this action is GRANTED.

A conference with all counsel in this matter is hereby SET for Friday, November 2, 2018, at 11:00 a.m., in the chambers of the undersigned at the Hugo

L. Black U.S. Courthouse, Birmingham, Alabama, to discuss further proceedings in the case.

**DONE** and **ORDERED** on this 26th day of October, 2018.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE